411 P.2d 836

**Orpha W. HANKS, LaMar Wignall, and Dorcus W. Long, for and on Behalf of the Estate of Zella H. Wignall, deceased, Plaintiffs and Appellants,**

v.

**Leona W. HALES, Blanche W. Tew, and Bryan Tew, Defendants and Respondents.**

No. 10430.

Supreme Court of Utah.

March 7, 1966.

Howard & Evans, Jackson B. Howard, Provo, for appellants.

Robert J. Sumsion, Springville, for respondents.

CROCKETT, Justice:

The plaintiffs, grandchildren and heirs of Zella H. Wignall, deceased, sue claiming a share of six bank accounts held in joint tenancy by their grandmother and her two daughters, defendants Leona Wignall Hales and Blanche Wignall Tew, who are also thus aunts of the plaintiffs. The case was tried to the court. After the plaintiffs presented their evidence defendants moved for dismissal which was granted. Plaintiffs appeal.

The bank accounts referred to had been created by the deceased as joint accounts with her daughters several years prior to her death. They were of the type commonly used, providing for joint tenancy in the funds; that either could withdraw them; and for the right of survivorship. All of the money had been deposited there-

in by the deceased. The passbook was kept in a dresser drawer in the deceased's home at Springville, Utah. On January 28, 1963, she fell and broke her hip; on February 2d entered the Utah Valley Hospital and died on March 6th. Meanwhile, on February 18, 1964, prior to their mother's death, defendants had withdrawn from the bank accounts $20,091.74 which they divided between them.

Plaintiffs contend that in the setting up of these accounts their grandmother did not intend to give the defendants ownership in the funds, nor to create a true joint tenancy with right of survivorship. They urge that the accounts were put in that form merely as a convenient arrangement so the defendants could withdraw money to serve the needs of their mother if and when that should become necessary in her old age.

■ As part of their attack on these accounts the plaintiffs advance the argument that they do not possess the four unities of title, interest, time and possession, characteristic of "joint tenancies" and of "estates by the entirety" in real property

at common law. Except for the fact that they are somewhat remote descendents, joint tenancy bank accounts in modern concept are not concerned with nor limited by those vestigial forms; and the unities mentioned are not essential to the validity of bank accounts of this character. They are creatures of contract as expressed in the wording on the cards.[1] This is an agreement between the bank and the parties, fixing the conditions upon which the money is deposited; upon which it may be withdrawn; and the rights of the parties between themselves. Such a deposit card when duly signed is entitled to the same sanctity as any other duly executed written contract.

■ We are thus brought to a consideration of the principal difficulty confronting the plaintiffs: They are trying to defeat the effect of a written instrument. It is endowed with a presumption of validity. Its provisions, including the recited facts of joint tenancy with right of survivorship, must be given effect unless it is successfully attacked on some proper ground; and it can only be overcome by clear and convincing evidence.[2]

1. See Marble v. Jackson, 245 Mass. 504, 139 N.E. 442; and 20 Am.Jur.2d 96, Sec. 4. See § 57–1–5, U.C.A.1953 which provides with respect to real property that in a grant to two or more persons the use of the words "joint tenancy" or "with rights of survivorship" or words of similar import declare a joint tenancy.

2. The rule that written documents duly executed are endowed with a presumption of validity and will be given effect unless overcome by clear and convincing evidence is supported by innumerable cases. Some examples from this court are: Universal C. I. T. Credit Corp. v. Nelson et al., 17 Utah 2d 280, 409 P.2d 615, where defendant had signed an indemnity agreement but was relieved of liability because indemnitee had not made full disclosure. The court recognized that to overcome

Whether the required quantum of proof has been met is for the trial court to determine.[3] When it has done so, we could rule to the contrary only if all reasonable minds would so believe from the evidence. No such conclusion is warranted here. Rejection of plaintiffs' proof as insufficient to overcome the effect of the joint tenancy with right of survivorship in these accounts finds support in the fact that they had been created in that form and had continued to so exist for several years prior to Mrs. Wignall's death; and by the further fact that it is shown that on two occasions she had requested defendants to have the accounts changed to their own names.

Sustaining this judgment is in harmony with the closely analogous case of Haywood v. Gill,[4] recently decided by us. Therein we pointed to the joint tenancy account and stated, ". * * * The trial court could regard the account as just what it purported to be * * * [joint tenancy with right of survivorship] in view of the documentary foundation of his findings, in the absence of clear and convincing evidence to the contrary, they should not be disturbed."[5]

Affirmed. Costs to defendants (respondents).

HENRIOD, C. J., and McDONOUGH, WADE, and CALLISTER, JJ., concur.

the effect of the signed document the proof "must be shown by clear and convincing evidence"; in Beehive Security Co. v. Bush, 16 Utah 2d 328, 400 P.2d 506, defendant was relieved of note and mortgage where trial court found he did not receive consideration. In affirming, this court stated, "There is no disagreement that in order to sustain findings avoiding the effect of the documents in question the evidence must be clear and convincing. * *. * [citing cases] We are of the opinion that the evidence amply sustains this requirement." The same quantum of proof, clear and convincing evidence, has been required to overcome the effect of other written documents, including contracts: Rubey v. Wood, 13 Utah 2d 285, 373 P.2d 386 (1962) and Bennett v. White, 14 Utah 2d 92, 377 P.2d 1004; see also Hawkins v. Perry et al., 123 Utah 16, 253 P.2d 372, where property purchased under contract was held in trust for another; deeds: Chamberlain et al. v. Larsen et al., 83 Utah 420, 29 P.2d 355; and Northcrest,

Inc. v. Walker Bank & Trust Co., 122 Utah 268, 248 P.2d 692; that a deed to his son resulted in trust to the father grantor, see Child v. Child, 8 Utah 2d 261, 332 P.2d 981. This rule has also been held to apply to a release of claim, Maxfield v. Denver & Rio Grande Western R. Co., 8 Utah 2d 183, 330 P.2d 1018; acceptance of settlement, Jimenez v. O'Brien, 117 Utah 82, 213 P.2d 337; that a deed may be treated as a mortgage if so intended by the parties, see Thornley Land & Livestock Co. v. Gailey et al., 105 Utah 519, 143 P.2d 283.
3. See Child v. Child, 8 Utah 2d 261, 332 P. 2d 981.
4. 16 Utah 2d 299, 400 P.2d 16.
5. In this respect different from cases cited by plaintiffs: Culley v. Culley, 17 Utah 2d 62, 404 P.2d 657 (1965); First Security Bank of Utah v. Demiris, 10 Utah 2d 405, 354 P.2d 97 (1960); Tangren v. Ingalls, 12 Utah 2d 388, 367 P.2d 179 (1961); and Braegger v. Loveland, 12 Utah 2d 384, 367 P.2d 177 (1961).